IN THE UNITED STATES DISTRICT AND BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
FILED

MAR 18 2026

Nathan Ochsner, Clerk of Court

**Chanee Tennille Coleman**,

Petitioner and Real Party in Interest,

v.

**UNITED STATES OF AMERICA**, acting through the Secretary of Housing and Urban Development and additionally acting through the Chairman of the Securities and Exchange Commission, or a majority of the Commissioners;

**IDAHO HOUSING AND FINANCE ASSOCIATION**, individually and as alleged mortgagee or servicer;

**BONIAL & ASSOCIATES, P.C.**,

**STATE OF TEXAS**, acting through its Attorney General, Texas Department of Housing and Community Affairs Governing Board and Executive Dirctor, and other relevant regulatory authorities;

**THE CHAIRMAN OF THE SECURITIES AND EXCHANGE COMMISSION, or a majority of the Commissioners**,

and

**ALL PERSONS OR ENTITIES UNKNOWN CLAIMING ANY RIGHT, TITLE, OR INTEREST** in the real property described herein,

Defendants.

Civil Action No. TBD

## VERIFIED PETITION

### BILL IN EQUITY TO QUIET TITLE, FOR DECLARATORY RELIEF, EQUITABLE REDEMPTION, RESCISSION, CANCELLATION OF INSTRUMENTS, ACCOUNTING, CONSTRUCTIVE TRUST, EQUITABLE ESTOPPEL, EQUITABLE SUBROGATION, AND ANCILLARY MATTERS

Petitioner invokes the equitable jurisdiction of this Court pursuant to **28 U.S.C. §§ 1346(f), 2409a, 1367, and 2201**, the **Quiet Title Act of 1972 (Public Law No. 92-562, 86 Stat. 1176)**, the **Federal Rules of Civil Procedure**, and long-established principles of equity.

### I. NATURE OF THE ACTION

1. This is a civil action in equity concerning disputed title to real property commonly known as:

15538 KIPLANDS BEND DRIVE

HOUSTON, HARRIS COUNTY, TEXAS 77014-1535, and legally described as: "The land referred to in this document is situated in the CITY OF HOUSTON, COUNTY OF HARRIS, STATE OF TEXAS, and described as follows: LOT 45, IN BLOCK 2, OF BAMMEL VILLAGE SEC. 2, REPLAT NO. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 587230 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS."

(the "Subject Property").

2. The action seeks adjudication of the **validity, priority, and extent of competing interests** asserted against the Subject Property.

3. The Petition further seeks equitable relief including:

- quiet title;

- equitable redemption,

- rescission and cancellation of instruments,

- accounting of debt and foreclosure proceeds,

- declaratory relief determining legal rights in the property, and

- other equitable remedies necessary to remove the cloud upon title.

4. The controversy arises from **foreclosure proceedings and asserted mortgage interests** that conflict with Petitioner's claimed property interests and possessory rights.

## II. JURISDICTION AND VENUE

5. Jurisdiction is invoked pursuant to:

- **28 U.S.C. § 1346(f)** — jurisdiction over civil actions involving claims to real property in which the United States claims an interest;

- **28 U.S.C. § 2409a** — the Quiet Title Act;

- **28 U.S.C. § 1367** — supplemental jurisdiction;

- **28 U.S.C. § 2201** — declaratory judgment jurisdiction.

6. This action arises under the **Quiet Title Act of 1972**, which authorizes suits to adjudicate real property title disputes involving federal interests.

7. Venue is proper in the **Southern District of Texas** pursuant to **28 U.S.C. § 1391** because the Subject Property lies within this District.

## III. PARTIES

8. **Petitioner Chanee Tennille Coleman** is the occupant and real party in interest asserting possessory, equitable, and claimed title interests in the Subject Property.

9. **The United States of America** is named because federal agencies claim or may claim interests in the Subject Property through federal housing programs and foreclosure-related conveyance procedures.

10. The **Secretary of Housing and Urban Development** is implicated because the Subject Property is represented to be associated with a **Federal Housing Administration insured mortgage loan**.

11. According to foreclosure correspondence received by Petitioner, the property is expected to be conveyed to **Idaho Housing and Finance Association** and thereafter transferred to the Secretary of Housing and Urban Development.

12. **Idaho Housing and Finance Association** is identified as the mortgagee or servicer claiming entitlement to foreclose upon the Subject Property.

13. **Bonial & Associates, P.C.** is the law firm transmitting foreclosure notices and acting as debt collector in connection with the alleged mortgage obligation.

14. **The State of Texas** is joined because state statutory frameworks, recording systems, and enforcement mechanisms affect the alleged mortgage and foreclosure interests asserted against the property.

15. The **Chairman of the Securities and Exchange Commission, or a majority of the Commissioners**, are joined to the extent that the alleged mortgage loan may have been securitized or included in investment instruments governed by federal securities laws.

16. Additional **unknown persons or entities** claiming interests through assignments, securitization, foreclosure proceedings, or conveyances are joined to ensure complete adjudication.

## IV. FACTUAL ALLEGATIONS

### A. Concrete and Particularized Injury

17. Petitioner occupies the Subject Property and asserts possessory and equitable interests therein.

18. Petitioner has received communications alleging the existence of a mortgage loan secured by the Subject Property.

Notice #62025030-1647*SEALED

19. Petitioner disputes the existence of any valid deed of trust or other instrument securing indebtedness against the property.

20. The asserted foreclosure proceedings and related notices have resulted in:

- threat of dispossession,
- impairment of property interests,
- damage to property rights and occupancy status, and
- creation of a continuing cloud upon title.

21. These injuries are personal, concrete, and particularized.

B. Debt Collection and Foreclosure Notices

22. On **January 17, 2026**, Petitioner received correspondence from **Bonial & Associates, P.C.** asserting collection of a mortgage debt on behalf of **Idaho Housing and Finance Association.**

23. The correspondence claimed an alleged loan balance exceeding **$149,000** and demanded dispute of the debt within a specified period.

24. Petitioner disputes the validity of the alleged debt and asserts that no lawful instrument secures such indebtedness against the Subject Property.

25. On **February 16, 2026**, Petitioner received an additional notice stating that foreclosure proceedings were underway and that the property would likely be conveyed to **Idaho Housing and Finance Association** and subsequently transferred to the **Secretary of Housing and Urban Development.**

C. Federal Housing Administration Interest Framework

26. The February notice states that the Subject Property is associated with a **Federal Housing Administration insured mortgage program.**

27. Under FHA procedures, properties acquired through foreclosure may be conveyed to the Secretary of Housing and Urban Development.

28. The notice further asserts that HUD requires properties conveyed to the Secretary to be vacant.

29. These assertions indicate that the **United States claims or may claim an interest in the Subject Property through federal housing program mechanisms.**

D. Securities-Related Interests

30. Mortgage loans insured by federal programs are frequently pooled into mortgage-backed securities regulated under federal securities laws.

Notice #62025030-1647*SEALED

31. If the alleged loan associated with the Subject Property has been securitized, federal securities regulatory interests may exist concerning the loan and its servicing.

E. State Interests

32. The State of Texas maintains regulatory oversight of real property recording systems, foreclosure procedures, and lending practices affecting the Subject Property.

33. The State's statutory framework and judicial precedents govern the enforcement of foreclosure and mortgage claims affecting Texas real property.

F. Causation

34. Petitioner's injuries arise from:

- asserted mortgage claims,
- foreclosure notices,
- threatened transfer of property to federal authorities, and
- competing claims of ownership or security interests.

G. Redressability

35. Judicial determination of the validity, priority, and extent of the competing interests will remove the cloud upon title.

36. Equitable relief will clarify the legal relations of the parties and prevent multiplicity of litigation.

## V. CLAIM FOR RELIEF — QUIET TITLE

37. Petitioner incorporates the foregoing allegations.

38. A substantial and actual controversy exists regarding lawful title to the Subject Property.

39. Petitioner asserts a cognizable property interest under Texas law.

40. Defendants assert or may assert adverse claims affecting the title.

41. These competing claims constitute a present cloud upon title within the meaning of the Quiet Title Act.

## VI. EQUITABLE REDEMPTION

42. Petitioner seeks equitable redemption to the extent foreclosure prerequisites were not satisfied or equity otherwise permits relief.

43. Equity disfavors forfeiture of property rights where statutory safeguards have not been strictly observed.

## VII. RESCISSION, CANCELLATION, AND ACCOUNTING

44. Petitioner seeks rescission of any void or voidable instruments affecting the property.

45. Petitioner requests cancellation of documents that improperly cloud title.

46. Petitioner further seeks a full accounting of:

- all alleged loan balances,
- servicing transactions,
- foreclosure proceeds, and
- insurance or guaranty payments.

## VIII. CONSTRUCTIVE TRUST

47. Where property has been retained or transferred under circumstances rendering continued beneficial ownership inequitable, imposition of a constructive trust is appropriate.

## IX. DECLARATORY RELIEF

48. Pursuant to **28 U.S.C. § 2201**, Petitioner seeks a declaration determining the rights and interests of all parties regarding the Subject Property.

49. Declaratory relief will resolve the existing controversy and remove the cloud upon title.

## X. JURISDICTIONAL FOUNDATION

A. Quiet Title Act Waiver

50. This action is brought within the sovereign-immunity waiver provided in **28 U.S.C. § 2409a**

51. The United States claims or may claim an interest in the Subject Property through federal housing program mechanisms and anticipated conveyance procedures.

B. Article III Standing

52. Petitioner alleges:

- a specific property interest,
- concrete injury,

Notice #62025030-1647*SEALED

- causal connection to Defendants' conduct, and
- redressability through judicial decree.

C. Property-Specific Controversy

53. The Petition presents a property-specific dispute concerning title to a defined parcel of real property.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court:

1. Determine the nature and extent of all claimed interests in the Subject Property;

2. Quiet title consistent with lawful priority;

3. Permit equitable redemption upon proper accounting where appropriate;

4. Rescind and cancel any void or voidable instruments affecting title;

5. Order a full accounting of all sums related to the alleged loan and foreclosure proceedings;

6. Impose a constructive trust where equity requires;

7. Declare the rights and legal relations of the parties; and

8. Grant such further equitable relief as justice requires.

Respectfully tendered,



**Chanee Coleman**
Petitioner and Real Party in Interest

**VERIFIED DECLARATION**

(28 U.S.C. § 1746)

I, **Chanee Coleman**, declare under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

**I affirm the foregoing as true and correct, without oath, in good faith and conscience**

Respectfully tendered this 7th day of March, 2026 CE,

By: _____

Chanee Coleman, without prejudice
15538 Kiplands Bend Drive
Houston, Texas [77014-1535]
All rights reserved



## IN THE UNITED STATES DISTRICT AND BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

To    IDAHO HOUSING AND FINANCE ASSOCIATION
      565 W. MYRTLE
      BOISE, ID 83702

March 7, 2026

Dear IDAHO HOUSING AND FINANCE ASSOCIATION and all other interested parties:

I am responding to your contact about collecting a debt. You contacted me through a third-party debt collector "BONIAL & ASSOCIATES, P.C." on "January 17, 2026" and identified the debt as mortgage debt you are attempting to collect on behalf of Idaho Housing and Finance Association.

You can contact me about this debt, but only in the way I say below and never in any electronic form. Don't contact me about this debt in other way, or at any other place or time. It is inconvenient to me to be contacted except as I authorize below.

You can only contact me at:

United States District & Bankruptcy Courts of Southern District of Texas
c/o Nathan Ochsner, Clerk of Court
P. O. Box 61010 Houston, TX 77208;

OR,

Chanee Coleman
15538 Kiplands Bend Drive
Houston, Texas [77014-1535];

I am unemployed therefore unable to be contacted at any place of employment.

Thank you for your cooperation. Sincerely

By _____
Chanee Coleman, without prejudice
15538 Kiplands Bend Drive
Houston, Texas [77014-1535]
All rights reserved

Notice #62025030-1647.06*SEALED

RP-2018-266061
06/15/2018   ER   $80.00

RP-2018-266061

RESCISSION

1001 - 252259

When Recorded Mail To:
AmCap Mortgage, Ltd
C/O DocProbe
1125 Ocean Avenue
Lakewood, NEW JERSEY 08701

[Space Above This Line For Recording Data]

## DEED OF TRUST

COLLIN
Loan Number: 2512____14
MIN: ___-G007___-4
Case Number: ___-703

FHA Case No.
___-3101507-703

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated JUNE 13, 2018, together with all Riders to this document.

FHA TEXAS DEED OF TRUST (09/15)

GVT85-00113TXP (CHA) (10/17)                    (page 1 of 14 pages)

(B) "Borrower" is CHANEE T. COLEMAN, A SINGLE PERSON. Borrower is the Grantor under this Security Instrument.

(C) "Lender" is AmCap Mortgage, Ltd.

Lender is a LIMITED PARTNERSHIP, organized and existing under the laws of TEXAS.

Lender's address is 9999 Bellaire Blvd., Suite 700, Houston, TEXAS 77036.

Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D) "Trustee" is RICHARD A. RAMIREZ. Trustee's address is 8920 BUSINESS PARK DRIVE, SUITE 175, AUSTIN, TEXAS 78759.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated JUNE 13, 2018. The Note states that Borrower owes Lender One Hundred Forty One Thousand Three Hundred Ninety One Dollars and No Cents (U.S. $141,391.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2048.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Planned Unit Development Rider

☐ Other(s)

[specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

FHA TEXAS DEED OF TRUST (9/15)

GV183-00113TXP (FHA) (10/17)                    Page 2 of 14 pages

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.

(S) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Trustee, for the benefit of Lender, the following described property located in the County of HARRIS:

LOT 45, IN BLOCK 2, OF HAMMEL VILLAGE SEC. 2, REPLAT NO. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 587230 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS

Parcel ID Number: 114-104-012-0035

which currently has the address of 15538 KIPLANDS BEND DRIVE [Street] HOUSTON [City], TEXAS 77014 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

GVI83-0011TX2F (FHA) (12/17)     (page 3 of 16 pages)     FHA TEXAS DEED OF TRUST (09/15)

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount

FHA TEXAS DEED OF TRUST (09/15)

GV:83-0311STXP (FHA) (10/17) (page 4 of 14 pages)



REDEMPTION

due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency

FHA TEXAS DEED OF TRUST (09/15)

GV183-00113TXP (RHA) (10/17)　　　　　　(page 5 of 14 pages)



Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value

FHA TEXAS DEED OF TRUST (09/15)
GV183-08117TXP (FHA) (10/17)  (page 6 of 14 pages)



due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in

FHA TEXAS DEED OF TRUST (09/15)

GV183-0011TXP (RHA) (10/17)                    (page 7 of 14 pages)

RP-2018-266061

single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security

FHA TEXAS DEED OF TRUST (09/15)

GV183-00113TXF (FHA) (10/17)        (page 5 of 14 pages)



Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those

FHA TEXAS DEED OF TRUST (09/15)

GV183-00113TXP (FHA) (10/17)                    (page 9 of 14 pages)

beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a Security Instrument. These conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to

FHA TEXAS DEED OF TRUST (09/15)

GVI83-00115TXP (FHA1 (10/17)                    (page 10 of 14 pages)



Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. Borrower Not Third-Party Beneficiary to Contract of Insurance. Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

FHA TEXAS DEED OF TRUST (09/15)

GV183-00113TDF (FHA) (10/17)                    (page 11 of 14 pages)

invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**

Check box as applicable:

[X] **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

FHA TEXAS DEED OF TRUST (09/15)

GV183-00113TXP (FHA) (10/17)                    (page 12 of 11 pages)



☐ **Owelty Partition.**

These represent funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title in the Property, and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the owelty is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is a renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)

(Borrower)
CHANEY T. COLEMAN

GVTX3-0015LO (FHA) (10/17)          (page 15 of 15 pages)          FHA TEXAS DEED OF TRUST (09/15)

RESCISSION June 15, 2018



(Space Below This Line For Acknowledgment)

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before _____ JUN 12 2018 _____ by CHANEL T. COLEMAN

JEANETTE PENDAS
Notary ID #130401901
My Commission Expires
October 12, 2019

(Signature of officer)

(Title of officer)

My Commission Expires: 10/12/19

Loan Originator Organization Name: Amcap Mortgage, Ltd.
Loan Origination Organization NMLS ID: 129122
Loan Originator Name: Brock Green
Loan Originator NMLS ID: 220898

THE TEXAS DEED OF TRUST (02/15)

GV183-40113TXE (SRA) (1017)     (page 13 of 14 pages)

RP-2018-266061



COLEMAN
Loan Number: 231225074
MIN:1001109-0000727396-4
Case Number: 3123191507-703

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 13th day of JUNE, 2018, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to AmCap Mortgage, Ltd. ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS 77014
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

SAMMIE VILLAGE SEC. 2 REPLAT NO.1
[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage" and loss by flood, to the extent required by the Secretary, then:

   (i) Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and

   (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear

GV185-01139AGMF.SWI51           FHA Multistate PUD Rider—9/14
(page 1 of 3 pages)

RP-2018-266061

interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.



RESCISSION
June 15, 2018

RP-2018-266061

CV18S-01190AGMP (09/15)

FHA Multistate PUD Rider – 9/14
(page 2 of 2 pages)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.



_____ Borrower
CHANEY "R" COLEMAN

RESCISSION

June 15, 2018

GV185-01190AG3XF (09/15)

FHA Multistate PUD Rider — 9/14
(page 3 of 3 pages)

RP-2018-266061



RP-2018-266001
Pages 18
06/15/2018 08:05 AM
e-Filed & e-Recorded in the
Official Public Record
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees $80.00

RP-2018-266061

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me, and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS



# EXHIBIT B

RP-2018-266062
06/15/2018　ER　$48.00

3

1001- 252259 RTT



After recording return to:
AmCap Mortgage, Ltd.
9999 Bellaire Blvd, Ste. 700
Houston, TX 77036

SUBORDINATE LIEN
DEED OF TRUST

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

THE STATE OF TEXAS

COUNTY OF Harris

DEED OF TRUST

This Subordinate Lien Deed of Trust ("Security Instrument") is made on June 13, 2018. The grantor is CHANEE T COLEMAN, A SINGLE PERSON ("Borrower") [include the name of the person or persons who hold title to Property and any spouse]. The trustee is Timothy C. Irvine, whose address is P.O. Box ___, Austin, TX 78711-3941 ("Trustee"). The beneficiary is The Bank of New York Mellon Trust Company, N.A., in its capacity as bond trustee pursuant to the Indenture (hereafter described), a national banking association, whose address is 10161 Centurion Parkway, Jacksonville, Florida 32256, on behalf and for the benefit of Texas Department of Housing and Community Affairs, a public and official agency of the State of Texas, whose address is P.O. Box 13941 (re Austin, TX 78711-3941 ("Lender"). Indenture means, as applicable, that certain Single Family Mortgage Revenue Bond Trust Indenture dated as of October 1, 1980, between Lender and The Bank of New York Mellon Trust Company, N.A. as successor bond trustee, as amended and supplemented to date, or that certain Residential Mortgage Revenue Bond Trust Indenture dated November 1, 1987 between Lender and the Bank of New York Mellon Trust Company, N.A. as successor bond trustee, as amended and supplemented to d...

Borrower owes Lender the principal sum of

Five Thousand Six Hundred Fifty Five Dollars And Sixty Four Cents　Dollars (U.S. $5,655.64). This debt is evidenced by Borrower's subordinate lien note dated the same date as this Security Instrument ("Note"), with the full debt due and payable on the Final Maturity Date (as defined in the Note). The Note provides for certain potential deferrals or other payments. The Note also provides that the full debt, if not paid earlier, shall be due and payable on the sale of the Property (defined herein), refinance of the purchase money note dated 06/13/2018, in the original principal amount of $141,391.00 issued to Borrower and made payable to AmCap Mortgage, Ltd. ("First Lien Holder"), hereinafter the First Lien Note ("FLN"), or acceleration of either the FLN or this note upon Borrower's default, whichever is first to occur, or as otherwise further provided in the Note. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably sells, transfers, grants and conveys to Trustee, in trust, with power of sale, the following described property located in Harris County, Texas, more specifically described as (insert legal description):

Page 1

RESCISSION



Legal Description

LOT 45 IN BLOCK 2 OF EMMEL VILLAGE SEC. 2, REPLAT NO. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 567230 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.
PARCEL ID NUMBER: 114-012-0

which has the address of   15638 Kinlands Park Drive      Houston TX  77014
(Street)                                    (City)                          (Zip Code)

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, goods and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except as otherwise herein stated and except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1.      Payment. Borrower shall promptly pay when due all amounts payable under the Note.

2.      Application of Payments. Unless applicable law provides otherwise, any payment received by Lender prior to the Final Maturity Date shall be applied as a principal reduction to the outstanding loan balance whether evidenced by the Note or this Security Instrument.

3.      Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument and leasehold payments or ground rents, if any. Borrower shall pay these obligations on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments. Payment of these amounts in escrow (if required under the terms of the approved purchase money deed of trust ("First Lien Deed of Trust") securing the FLN, instead of directly to the person owed payment, will not be a default under this Security Instrument, provided that the escrow agent in turn pays them on time to the person owed payment and the escrow agent or the Borrower promptly thereafter furnishes to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien, other than the First Lien Deed of Trust, which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of Lender giving the notice.

RESCISSION

4. _____ and Notice to holder of First Lien Deed of Trust. Lender and Borrower acknowledge and agree that this Security Instrument is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Lien Deed of Trust. Upon the event of foreclosure or deed in lieu of foreclosure of the First Lien Deed of Trust, any provisions herein or any provisions in any other collateral agreement restricting the use of the Property to low or moderate income households or otherwise restricting the Borrower's ability to sell the Property shall have no effect on subsequent owners or purchasers of the Property (other than the Borrower or a related entity of the Borrower).

Prior to taking any actions under Paragraph 19, Lender shall notify the holder of the First Lien Deed of Trust of such default as provided in Paragraph 19 of this Security Instrument, and shall provide the holder of the First Lien _____ and the opportunity to cure any such default under this Security Instrument.

5.　　Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss claim if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened; provided, however, that the right of Lender to collect and apply such insurance proceeds shall be subject and subordinate to the rights of the holder of the First Lien Deed of Trust in effect and apply such proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender, subject to the rights of the First Lien Deed of Trust, may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given. If under Paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.　　Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Application. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty (60) days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.

7.     **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, in probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so. To the extent not prohibited by applicable law, any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall be payable, upon notice from Lender to Borrower requesting payment. Notwithstanding anything to the contrary contained herein, if Grantor's first mortgage securing the FLN is an FHA-insured mortgage, the Grantor is not liable for Lender's cost and expenses, including attorney fees, if the event of default results solely from Grantor's execution of the encumbrance instrument.

8.     **Inspection.** Lender or its agents may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9.     **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the rights of the First Lien Deed of Trust.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the Final Maturity Date.

10.     **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

11.     **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c)

IV-4

RESCISSION

agreed, Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.    Loan Charges.  If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that any charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

13.    Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by written notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have given to Borrower or Lender when given as provided in this paragraph.

14.    Governing Law; Severability.  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of the Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

15.    Borrower's Copy.  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16.    Transfer of the Property or a Beneficial Interest in Borrower.  As set forth in the Note, the debt secured by this Security Instrument shall be immediately due and payable in full upon various occurrences, including if all or any part of the Property or any interest in it is sold, transferred or foreclosed, other than (a) a transfer (not upon death) between joint tenants in the Property who are also a maker of the Note, or (b) a transfer by devise, descent or operation of law upon the death of a joint tenant and the Property at least one other joint tenant who is also a maker of the Note remains alive and continues to occupy the Property as his or her principal residence.  If a transfer other than as allowed herein or by Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law or the law of the jurisdiction in which the Property is located as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

The restriction on the transfer of Property will automatically terminate if sale to the Property is transferred by foreclosure or deed-in-lieu of foreclosure, or if the mortgage is assigned to the Secretary of the U.S. Department of Housing and Urban Development in accordance with 24 C.F.R. §203.41.

17.    Sale of Note; Change of Loan Servicer.  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with Paragraph 13 above and applicable law.  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any other information required by applicable law.

IV-5

18.   Hazardous Substances.  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 18, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this Paragraph 18, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

19.   Acceleration; Remedies.   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 16 unless applicable law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law.  Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law.  Sale shall be made at the area at the county courthouse or other area designated by the commissioners court of the county in which the Property is located between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month as provided by applicable law.  Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty of Borrower.  Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it in accordance with applicable law.

If the Property is sold pursuant to this Paragraph 19, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale.  If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

20.   Release.   Upon payment of all sums secured by this Security Instrument, Lender shall release or cause Beneficiary to release this Security Instrument without charge to Borrower.  Borrower shall pay any recordation costs.

**RESCISSION**
*June 15, 2018*

21.    Substitute Trustee. Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

22.    Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

23.    Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

24.    Waiver of Notice of Intention to Accelerate. Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in Paragraph 19.

25.    Purchase Money; Vendor's Lien; Renewal and Extension. The Note was given in partial payment of the purchase price for the Property. The Note may also be secured by a Vendor's Lien against the Property. If so, this Security Instrument does not waive the vendor's lien, and the two liens and the rights created by this Security Instrument shall be cumulative. Lender may elect to foreclose under either of the liens without waiving the other or may foreclose under both.

RP-2018-266062

Originating Company: AmCap Mortgage Ltd.                                    NMLS: 18122

Individual Loan Originator: Brock Green                                    NMLS: 220898

[Signatures to Follow.]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this security instrument and in any rider executed by Borrower and recorded with it.

Borrower CHARITY T COLEMAN

Borrower _____

N/S

Borrower _____

Borrower _____

[Space below This Line for Acknowledgment]

THE STATE OF TEXAS §
§
COUNTY OF Harris §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared _____ known to me to be the person(s) whose names(s) is/are subscribed to the foregoing instrument and acknowledged to me that she/he/they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, the _____ day of _____ 20___

(SEAL)

JEANETTE PENDAS
Notary ID 130401201
My Commission Expires
October 12, 2019

Notary Public, State of Texas

THE STATE OF TEXAS §
§
COUNTY OF _____ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared _____ known to me to be the person(s) whose names(s) is/are subscribed to the foregoing instrument and acknowledged to me that she/he/they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _____ day of _____ 20___

(SEAL)

Notary Public, State of Texas



RP-2018-266062



THE STATE OF TEXAS §
§
COUNTY OF §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared _____ known to me to be the person(s) whose names(s) is/are subscribed to the foregoing instrument and acknowledged to me that she/he/they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _____ day of _____, 20____

(SEAL)

_____
Notary Public, State of Texas

THE STATE OF TEXAS §
§
COUNTY OF §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared _____ known to me to be the person(s) whose names(s) is/are subscribed to the foregoing instrument and acknowledged to me that she/he/they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _____ day of _____, 20____

(SEAL)

_____
Notary Public, State of Texas

IV-9

RESCISSION

June 15, 2018

RP-2018-266062

RP-2018-266062
# Pages 10
06/15/2018 08:05 AM
e-Filed & e-Recorded in the
Official Public Records
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees $48.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS



RP-2022-413173
08/12/2022   ER   $38.00

Title: LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

This Document Prepared By:
CASSIDY FRAKER
IDAHO HOUSING AND FINANCE ASSOCIATION
565 W MYRTLE
BOISE, ID 83702
800-526-7145

When Recorded Mail To:
FIRST AMERICAN TITLE
ATTN: JAVIER TONY VARGAS
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707

Tax/Parcel #: 114-104-012-0045

[Space Above This Line for Recording Data]

Original Principal Amount: $141,391.00
Unpaid Principal Amount: $134,057.89
New Principal Amount: $136,858.04

FHA/VA/RHS Case No.:512-3103507705

Loan No: 4850104102

## LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE

HUD Modification Agreement 02232022_15

Page 1

10 4850104102

PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

This Loan Modification Agreement ("Agreement"), made this 25TH day of MAY, 2022, between CHANEE T. COLEMAN, A SINGLE PERSON ("Borrower"), whose address is 15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS 77014 and IDAHO HOUSING AND FINANCE ASSOCIATION ("Lender"), whose address is 565 W. MYRTLE, BOISE, ID 83702, amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated JUNE 13, 2018 and recorded on JUNE 15, 2018 in INSTRUMENT NO. RP-2018-266061, of the OFFICIAL Records of HARRIS COUNTY, TEXAS, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS 77014**

(Property Address)

the real property described is located in HARRIS County, TEXAS and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, JULY 1, 2022 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $136,858.04, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest and other amounts capitalized, which is limited to escrows, and any legal fees and related foreclosure costs that may have been accrued for work completed, in the amount of U.S. $2,800.15.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.1250%, from JUNE 1, 2022. The Borrower promises to make monthly payments of principal and interest of U.S. $586.27, beginning on the 1ST day of JULY, 2022 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on JUNE 1, 2052 (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural

HUD Modification Agreement 02232022_45

Page 2

ID 4850104102



person, without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including, without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

HUD Modification Agreement 02232022_45                                    10 4850104102

RP-2022-413173

In Witness Whereof I have executed this Agreement.

Borrower CHANEE T COLEMAN      6-10-22

Date

[Space Below This Line for Acknowledgments]

BORROWER ACKNOWLEDGMENT

State of TEXAS

County of HARRIS

This instrument was acknowledged before me, Tata DeHart on this day personally appeared **CHANEE T COLEMAN** known to me, has proved to me through Texas Drivers License (description of Identify Card or Document) to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

_____ This notarial act was an online notarization using communication technology

Given under my hand and seal of office this 10th day of June (month), 2022 (year)

Notary Public's Signature

Printed Name: Tata DeHart



T ATA DEHART
Notary Public, State of Texas
Comm. Expires 11-16-2024
Notary ID 130552524

HUD Modification Agreement 02232022_45

Page 4      10 4850104102



In Witness Whereof, the Lender has executed this Agreement.

IDAHO HOUSING AND FINANCE ASSOCIATION

By JASON SILLSMAN                    (print name)                    7/18/22
Authorized Representative            (title)                         Date
Michelle Tradmu

[Space Below This Line Is Acknowledgments]

LENDER ACKNOWLEDGMENT

State of IDAHO
County of ADA

The foregoing instrument was acknowledged before me this
07/12/2022 by JASON SILLSMAN AUTHORIZED
REPRESENTATIVE of IDAHO HOUSING AND FINANCE ASSOCIATION, a
company, on behalf of the company.

Notary Public

Printed Name: Maya G. Frode
My commission expires: 06/23/2028

HUD Modification Agreement 02232022_45

Page 5

10 4850104102



**EXHIBIT A**

BORROWER(S): CHANEE T. COLEMAN, A SINGLE PERSON

LOAN NUMBER: 4850104102

LEGAL DESCRIPTION:

The land referred to in this document is situated in the CITY OF HOUSTON, COUNTY OF HARRIS, STATE OF TEXAS, and described as follows:

LOT 45, IN BLOCK 2, OF BAMMEL VILLAGE SEC. 2, REPLAT NO. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 587230 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

ALSO KNOWN AS: 15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS 77014





RESCISSION June 11, 2022

RP-2022-413173
4 Pages 7
08/12/2022 10:0_ AM
e-Filed & e-Record__ _n th_
Official Public Record_ of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees $35.00

RP-2022-413173

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS



EXHIBIT D

RP-2023-119657
04/05/2023   ER   $38.00



Title: PARTIAL CLAIMS MORTGAGE

This Document Prepared By:
**JASON SHERMAN**
**IDAHO HOUSING AND FINANCE**
**ASSOCIATION**
**565 W MYRTLE**
**BOISE, ID 83702**
**800-526-7145**

When Recorded Mail To:
**FIRST AMERICAN TITLE**
**DTO REC., MAIL CODE: 4002**
**4795 REGENT BLVD**
**IRVING, TX 75063**

Tax/Parcel #: 114-104-012-0045
_____ [Space Above This Line for Recording Data]

FHA Case No.: 5⬚-31⬚1507⬚⬚3
Loan No: 485010410⬚

**15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS 77014**
(herein "Property Address")

## PARTIAL CLAIMS MORTGAGE

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on **MARCH 28, 2023**. The mortgagor is **CHANEE T. COLEMAN, A SINGLE PERSON** ("Borrower"), whose address is **15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS**

Partial Claims Agreement 01312023_105                                    ▒4850104102

Page 1

RESCISSION

77014. This Security Instrument is given to the **Secretary of Housing and Urban Development** whose address is **451 Seventh Street SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **TWELVE THOUSAND FOUR HUNDRED FIFTY-FOUR DOLLARS AND 73 CENTS (U.S. $12,454.73)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **JUNE 1, 2052.**

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in the County of **HARRIS**, State of **TEXAS**:

which has the address of , **15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS 77014** (herein "Property Address"):

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Tax Parcel No. **114-104-012-0045**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal.** Borrower **shall** pay when due the principal of the debt evidenced by the Note.

2. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any

Partial Claims Agreement 01312023_105                                    4850104102

forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

4. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

6. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require

Partial Claims Agreement 01312023_105

Page 3

M4850104102



immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.

RP-2023-119657

Partial Claims Agreement 01312023_105

4350104102



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

Borrower: CHANEE T. COLEMAN

Date 3-29-23

[Space Below This Line for Acknowledgments]

**BORROWER ACKNOWLEDGEMENT**

State of TEXAS

County of _Harris_

This instrument was acknowledged before me _Beeshemah Shontel Moreland_ on this day personally appeared CHANEE T COLEMAN known to me, _____ proved to me through _Driving License_ _____ (description of Identify Card or Document) to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

This notarial act was an online notarization using communication technology

Given under my hand and seal of office this _29_ day of _March_ (month), _2023_ (year)

Notary Public's Signature

Printed Name: _Beeshemah Shontel Moreland_

REESHEMAH SHONTEL MORELAND
Notary Public, State of Texas
Comm. Expires 03-08-2026
Notary ID 125224908

Partial Claims Agreement 01312023_105

Page 5

4850104102



**EXHIBIT A**

BORROWER(S): CHANEE T. COLEMAN, A SINGLE PERSON

LOAN NUMBER: 4850104102

LEGAL DESCRIPTION:

The land referred to in this document is situated in the CITY OF HOUSTON, COUNTY OF HARRIS, STATE OF TEXAS, and described as follows:

LOT 45, IN BLOCK 2, OF BAMMEL VILLAGE SEC. 2, REPLAT NO.1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 587230 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.



ALSO KNOWN AS: 15538 KIPLANDS BEND DRIVE HOUSTON, TEXAS 77014

Partial Claims Agreement 01312023_105

Page 6

4850104102



RP-2023-119657

RP-2023-119657
# Pages 7

04/05/2023 08:42 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees $38.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



**COUNTY CLERK**
**HARRIS COUNTY, TEXAS**

# EXHIBIT E

RP-2024-153618
04/30/2024    ER    $41.00

Title: PARTIAL CLAIMS MORTGAGE

This Document Prepared By:
JASON SHERMAN
IDAHO HOUSING AND FINANCE ASSOCIATION
565 W MYRTLE
BOISE, ID 83702
800-526-7145

When Recorded Mail To:
FIRST AMERICAN TITLE
DTO REC., MAIL CODE: 4002
4795 REGENT BLVD
IRVING, TX 75063

Tax/Parcel #: 114-104-012-0045
                              [Space Above This Line for Recording Data]

FHA Case No.: 51 3101507703
Loan No: 485 102

# PARTIAL CLAIMS MORTGAGE

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on APRIL 15, 2024. The mortgagor is CHANEE T. COLEMAN, A SINGLE PERSON. ("Borrower"), whose address is 15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS 77014. This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street SW, Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of EIGHTEEN THOUSAND ONE HUNDRED EIGHTY DOLLARS AND 25 CENTS (U.S. $18,180.25). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on JUNE 1, 2052.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in the County of HARRIS, State of TEXAS:

which has the address of, 15538 KIPLANDS BEND DRIVE, HOUSTON, TEXAS 77014 (herein "Property Address");

Partial Claims Agreement 12052023_105

10 4850104102

Page 1

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Tax Parcel No. 114-104-012-0045

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

2. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

4. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

6. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:



**Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act")(12 U.S.C. § 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.

Partial Claims Agreement 12052023_105



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

4-25-24

Borrower: CHANEE T. COLEMAN                                          Date

[Space Below This Line for Acknowledgments]

## BORROWER ACKNOWLEDGMENT

State of **TEXAS**

County of ___Harris___

This instrument was acknowledged before me, ___Clara Yen___ (Notary Public) on this day personally appeared **CHANEE T. COLEMAN** known to me, or ___✓___ proved to me through ___Texas Drivers license___ (description of Identity card or Document) to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

_____ This notarial act was an online notarization using communication technology

Given under my hand and seal of office this ___25th___ day of ___April___ (month), 20_24_ (year)

_____ This notarial act was an online notarial act.

Notary Public's Signature

Notary Printed Name: ___Clara Yen___

CLARA YEN
Notary Public
STATE OF TEXAS
My Comm. Exp. 12-29-27
Notary ID 255207...

Partial Claims Agreement 12052023_105

10 4850104102

Page 4





## EXHIBIT A

BORROWER(S): SHANEE T. COLEMAN, A SINGLE PERSON.

LOAN NUMBER: 4850104102

LEGAL DESCRIPTION:

The land referred to in this document is situated in the CITY OF HOUSTON, COUNTY OF HARRIS, STATE OF TEXAS, and described as follows:

LOT 45, IN BLOCK 2, OF BAMMEL VILLAGE SEC. 2, REPLAT NO. 1, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 587230 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

ALSO KNOWN AS: 15538 KIPLANDS BENDDRIVE, HOUSTON, TEXAS 77014

Partial Claims Agreement 12052023_105

Page 5

10 4850104102



RP-2024-153618

# Pages 6

04/30/2024 09:28 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees  $41.00

April 26, 2024

RESCISSION

**RECORDERS MEMORANDUM**
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS





ACCEPTED

February 1, 2026

9658-1904



**BONIAL & ASSOCIATES, P.C.**

January 17, 2026

**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 350
Dallas, TX 75254
Main: (972) 643-6600
Fax: (972) 643-6699

**To:** CHANEE T COLEMAN
15538 KIPLANDS BEND DRIVE
HOUSTON, TX 77014-1535

**ACCEPTED**

RE:    Property Address: 15538 KIPLANDS BEND DRIVE, HOUSTON, TX 77014-1535
BPC File: 9658-1904

*February 1, 2026*

**Bonial & Associates, P.C. is a debt collector.** We are trying to collect a debt owed to Idaho Housing and Finance Association, as servicer for Idaho Housing and Finance Association. We will use any information you give us to help collect the debt.

### Our information shows:

You have a mortgage loan with Idaho Housing and Finance Association, as servicer for Idaho Housing and Finance Association with a loan number of 4850104102.

| | |
|---|---|
| As of 05/01/2024 the amount owed is: | $131,591.20 |
| Between 05/01/2024 and today: | |
| Interest was charged in the amount of: | + $7,193.39 |
| Fees were charged in the amount of: | + $11,113.63 |
| You paid or were credited this amount toward the debt: | - $800.00 |
| **Total amount of the payoff 01/31/26:** | **$149,098.22** |

### How can you dispute the debt?

- **Call or write to us by February 24, 2026, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.
- **If you write to us by February 24, 2026,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

### What else can you do?

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by February 24, 2026, we must stop collection until we send you that information. You may use the form below or write to us without the form.
- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.
- Contact Idaho Housing and Finance Association, as servicer for Idaho Housing and Finance Association about your payment options.

<u>**Notice:**</u>  **See following page for important information.**

If you have received a discharge of this debt or if there is presently a stay in effect under bankruptcy law, this letter is

9658-1904

Page 2 of 4

not a demand for payment of the captioned debt or a notice of personal liability, but rather is for informational purposes only.

PLEASE SEE THE FOLLOWING PAGE FOR AN OPTIONAL RESPONSE FORM.

ACCEPTED

February 1, 2026

9658-1904

Page 3 of 4

**How do you want to respond?**

*Check all that apply:*

☐ **I want to dispute the debt because I think:**

    ☐ This is not my debt.

    ☐ The amount is wrong.

    ☐ Other (Please describe on reverse or attach additional information)

☐ **I want you to send me the name and address of the original creditor.**

☐ **I have enclosed this amount $_____**

*Make your check payable to Bonial & Associates, P.C.*
*Include the file reference 9658-1904.*

**Mail this form to:**
Bonial & Associates, P.C.
14841 Dallas Parkway, Suite 350
Dallas, TX 75254

CHANEE T COLEMAN
15538 KIPLANDS BEND DRIVE
HOUSTON, TX 77014-1535

**ACCEPTED**

February 1, 2026

9658-1904

Page 4 of 4

# EXHIBIT G

Bonial & Associates, P.C.
14841 Dallas Parkway
Suite 300
Dallas TX 75254

## USPS CERTIFIED MAIL



9214 8901 9403 8357 0590 67

CHANEE T COLEMAN
15538 KIPLANDS BEND DRIVE
HOUSTON TX 77014-1535



ACCEPTED

February 27, 2026

Certified



ACCEPTED

February 27, 2026



**BONIAL & ASSOCIATES, P.C.**

February 16, 2026

**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 350
Dallas, TX 75254
Main: (972) 643-6600
Fax: (972) 643-6699

## NOTICE TO OCCUPANT OF PENDING ACQUISITION

CHANEE T COLEMAN
15538 KIPLANDS BEND DRIVE
HOUSTON, TX 77014-1535

Case Number: 512-3101507-703

**ACCEPTED**

CC _____ February 27, 2026

AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA.
ESTO ES UN AVISO MUY IMPORTANTE. SI NO ENTIENDE EL CONTENIDO, OBTENGA UNA TRADUCCION INMEDIATAMENTE. SI USTED NO RESPONDE DENTRO DE VEINTE (20) DÍAS, PUEDE QUE TENGA QUE MUDARSE DE LA CASA O APARTAMENTO EN QUE VIVE.

Dear CHANEE T COLEMAN:

Idaho Housing and Finance Association, which if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement.

The mortgage for the property in which you are living is in foreclosure as a result of the property owner's default. Within the next 60 to 90 days, title to the property is expected to be transferred to Idaho Housing and Finance Association. Some time thereafter, ownership of the property will probably be transferred to the Secretary of Housing and Urban Development (HUD).

HUD generally requires that there be no one living in properties conveyed to the Secretary as a result of a foreclosure. As the Federal Housing Administration's (FHA) single family program is a mortgage insurance program, it must sell all acquired properties and use the proceeds of sale to help replenish the FHA Mortgage Insurance Fund. It is not a rental program. There are other programs within HUD that assist in making rental housing available.

However, before Idaho Housing and Finance Association conveys the property to HUD, you may be entitled to remain in the property for some period of time, pursuant to federal, state, or local law. If applicable, a separate notice regarding occupancy rights will be provided to you when complete title to the property is transferred to Idaho Housing and Finance Association.

If you are not entitled to remain in the property under federal, state, or local law, you may nevertheless be eligible to remain in the property upon conveyance to HUD, if certain conditions are met, as described in the document "Conditions for Continued Occupancy" which is attached to this letter (Attachment 3). To be considered for continued occupancy upon conveyance to HUD, you must submit a written request to HUD **within 20 days of the date at the top of this letter or the property must be vacated before the time HUD is scheduled to acquire it. Oral requests will not be accepted.**

Please use the enclosed, Form HUD-9539, Request for Occupied Conveyance (Attachment 1) in making your request, as it gives HUD information it needs to make its decision. You must send your request and the enclosed Request for Verification of Employment (Attachment 2) to Residential Enhancements, Inc., Attention: Mortgagee Compliance Manager, HUD's Mortgagee Compliance Manager (MCM), at the following address: 6434 Lawrenceville Hwy, Tucker,

GA 30084. As the occupant requesting the occupied conveyance, you have sole responsibility for submission of a signed Verification of Employment form with your Occupied Conveyance request.

If you or a member of your household suffers from an illness or injury that would be aggravated by the process of moving from the property, please also provide supporting documentation of the illness or injury. This documentation must include a projection of the date that the individual could be moved without aggravating the illness or injury and a statement by a state-certified physician establishing the validity of your claim.

Please ensure that you include all required documentation with your request; **incomplete requests will be denied**. Additional information that you wish to include with your request may be written on additional pages that you attach to the *Request for Occupied Conveyance* form.

If HUD approves your request to remain in the property, you will be required to sign a month-to-month lease and pay rent at the prevailing fair market rate. If HUD does not become owner of this property, any decision it may make with respect to your continued occupancy will no longer apply.

Your right to continued occupancy of the property under HUD's Occupied Conveyance policies will only be temporary, depending on the circumstances, as described in the attached document, Temporary Nature of Continued Occupancy (Attachment 4).

For assistance in finding affordable housing, you may wish to contact one or more of HUD's approved housing counseling agencies. These agencies usually provide services at little or no cost. A counselor may be able to recommend other organizations that can also be of assistance. If you have access to the Internet, you may locate a local housing counseling agency by visiting the following webpage: http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. Alternatively, you may call the HUD Housing Counseling and Referral Line, weekdays between 9:00 am and 5:00 pm EST. The Referral Line telephone number is (800) 569-4287.

If you have any questions concerning this notice, please contact Idaho Housing and Finance Association at 208-331-4700.



ACCEPTED                                    Sincerely,

February 27, 2026                           Bonial & Associates, P.C.

Attachments
**Attachment 1 (*Request for Occupied Conveyance - form HUD - 9539*)**
**Attachment 2 (*Request for Verification of Employment*)**
**Attachment 3 (*Conditions for Continued Occupancy*)**
**Attachment 4 (*Temporary Nature of Continued Occupancy*)**

*To the extent Bonial & Associates, P.C. is deemed a "debt collector" under federal law, this is an attempt to collect a debt and information obtained will be used for that purpose. If you are in bankruptcy or have received a bankruptcy discharge, this letter is for informational purposes only and is not intended to be an attempt to collect a debt or an act to collect, assess or recover any portion of the debt from you personally.*

*Assert and protect your rights as a member of the Armed Forces of the United States. If you or your spouse is serving on active military duty, including active military as a member of the Texas National Guard or the National Guard of another state, or as a member of a reserve component of the Armed Forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.*



**ACCEPTED**

*February 27, 2026*

Attachment 1 *(Request for Occupied Conveyance - Form HUD - 9539)*

## Request for Occupied Conveyance

**U.S. Department of Housing and Urban Development**
Office of Housing - Federal Housing Commissioner

OMB Approval No. 2502 0429 (exp. 12/31/2017)

Public reporting burden for this collection of information is estimated to average 0.25 hours per mortgagee and 0.5 hours per occupant, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Privacy Act Statement: The Department of Housing and Urban Development (HUD) is authorized to collect this information by 24 CFR 203.675 (b)(3). Section 165 of the Housing and Community Development Act of 1987, 42 U.S.C. 3543, requires persons applying for assistance under HUD programs to furnish his or her Social Security Number (SSN). The information will enable HUD to determine whether you qualify as a tenant, to maintain tenant rental accounts, and will provide the basis for facilitating the management and administration of the property disposition program. The information will be released to the local real estate broker who manages the property to facilitate property management. The information may be used to facilitate collection of overdue rents and may be released to collection agencies, consumer reporting and commercial credit agencies, and attorneys hired by the Department. It may also be released to appropriate Federal, State, and local agencies to facilitate collection of rent and, when relevant, to civil, criminal, or regulatory investigations or prosecutions. The information will not be otherwise disclosed or released outside of HUD, except as permitted or required by law. You must provide all of the information requested, including all SSNs you and all other household members age six (6) years of age and older, have and use. Giving the SSNs of all family members 6 years of age and older is mandatory; failure to provide the SSNs will affect your eligibility in the program. Failure to provide the requested information may result in a delay or rejection of your request to remain as an occupant.

This form does not supersede the Mortgagee's and/or Servicer's required compliance to the Protecting Tenants at Foreclosure Act (PTFA).

This form must be completed by the Occupant(s). When completed, send to HUD's Mortgagee Compliance Manager (MCM). The address, fax, or email information of HUD's current MCM can be found at http://www.hud.gov/offices/hsg/sfh/nsc/mcm.cfm or you can call 1-800-CALL-FHA

| Property Address: | Unit No. |
|---|---|

City, State & Zip Code:

| Name of Mortgage Company (Lender): | Mortgage Loan No.: | FHA Case No.: |
|---|---|---|

Dear Sir:

    I(We) desire to continue in occupancy as a tenant of this property if acquired by HUD. I(We) have lived in this property since _____ (please insert date). I(We) will sign a month-to-month lease and pay one month's rent within 15 days of the lease being presented to me(us). I(We) believe that I(we) can afford to make monthly rental payments. In my(our) opinion, this property, in its present condition is structurally sound, free from health and safety hazards, and is otherwise habitable.

    You may contact me(us) for arranging a convenient time for HUD's required inspection at the following telephone number _____ or my(our) representative at _____

(HUD must be able to make contact during normal working hours.)

I(We) understand that HUD's approval of my(our) request will, in part, be based on my(our) ability to make monthly rental payments. To assist HUD in making its determination, I(we) submit the following information concerning my(our) income:

| Occupant's Name: | | Occupation | Social Security No. | Gross Pay Per Month |
|---|---|---|---|---|
| | | | | $ |

| Employer's Name and Address : | Employer's Telephone No. |
|---|---|

| Spouse's Name : | | Occupation : | Social Security No. | Gross Pay Per Month |
|---|---|---|---|---|
| | | | | $ |

| Employer's Name and Address . | Employer's Telephone No. |
|---|---|

Names and Social Security Nos. of all Other Household Members 6 yrs. or older:

| Other Family Income (explain): | Other Sources of Income (if any): |
|---|---|

**Obligations.** (list all obligations including car loans, installment payments, and credit cards)

| Creditor's Name | Address (include city, State, & zip code): | Present Balance | Monthly Payment |
|---|---|---|---|
| | | $ | $ |
| | | | |
| | | | |
| | | | |
| | | | |

You have my(our) permission to contact any of the above for verification purposes

| Occupant's Signature : | Spouse's Signature : | Date : |
|---|---|---|
| X | X | |

ref. Handbook 4310.5      form **HUD-9539** (11/10)

**ACCEPTED**

 February 27, 2026

*Attachment 2 (Request for Verification of Employment)*

## Verification of Employment

| (Name of HOME Participating Jurisdiction) | Employed since: _____ Occupation: _____ |
|---|---|
| | Salary: _____ |
| | Effective date of last increase: _____ |
| | Base pay rate: |
| | $_____ /Hour; or $_____ /Week; or $_____ /Month |
| | Average hours/week at base pay rate: _____ Hours |
| | No. weeks _____; or No. weeks _____ worked/Year |
| AUTHORIZATION: Federal Regulations require us to verify Employment Income of all members of the household applying for participation in the HOME Program which we operate and to reexamine this income periodically. We ask your cooperation in supplying this information. This information will be used only to determine the eligibility status and level of benefit of the household. | Overtime pay rate: $_____ /Hour |
| | Expected average number of hours overtime worked per week during next 12 months _____ |
| | Any other compensation not included above (specify for commissions, bonuses, tips, etc.): |
| Your prompt return of the requested information will be appreciated. A self-addressed return envelope is enclosed. | For: _____ $_____ per _____ |
| | Is pay received for vacation? • Yes • No |
| | If Yes, no. of days per year _____ |
| | Total base pay earnings for past 12 mos. $_____ |
| | Total overtime earnings for past 12 mos. $_____ |
| | Probability and expected date of any pay increase: |
| | Does the employee have access to a retirement account? • Yes • No |
| | If Yes, what amount can they get access to: $_____ |
| RELEASE: I hereby authorize the release of the requested information | |
| | Signature of _____ or Authorized Representative |
| (Signature of Applicant) | |
| Date: _____ | Title: _____ |
| or a copy of the executed "HOME Program Eligibility Release Form," which authorizes the release of the information requested, is attached. | Date: _____ |
| | Telephone: _____ |

WARNING:    Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony for knowingly and willingly making false or fraudulent statements to any department of the United States Government



ACCEPTED

February 27, 2026

**Attachment 3** *(Conditions for Continued Occupancy)*

### HUD's Occupied Conveyance Procedures
### CONDITIONS FOR CONTINUED OCCUPANCY

Unless eviction is prohibited by state or local law, or by circumstances beyond the control of your lender, the following conditions must be met before HUD can approve the occupied conveyance of an acquired property. HUD will determine whether these conditions have been met at HUD's sole and absolute discretion, pursuant to authority provided in FHA occupied conveyance regulations at 24 CFR §§ 203.670-681 and additional guidance provided by the Department.

1. You agree to sign a month-to-month lease at fair market rent at the time HUD acquires the property and on a form prescribed by HUD (note: if you qualify for continued occupation based on Item 6.b. below, you will need to pay one month's rent in advance at the time the lease is executed).

2. Your total housing cost (rent plus utility costs) will not exceed 38 percent of your net income. However, a higher percentage may be permitted if you have been paying at least the required rental amount or there are other compensating factors, such as savings or family assistance.

3. You agree to allow access to the property, during normal business hours and with two days advance notice, by HUD staff or HUD representatives (including real estate brokers) so that the property can be inspected, repaired, or shown to prospective purchasers;

4. You disclose the complete and accurate Social Security Number assigned to you and to each member of your household; and

5. You submit your request and supporting documentation within 20 days as provided in the attached Notice to Occupant of Pending Acquisition; and

6. **At least one of the following two sets of conditions has been met:**

   a. An individual residing in the property suffers from a permanent, temporary, or long-term illness or injury that would be aggravated by the process of moving from the property, **or**

   b. HUD determines that it is in HUD's interest to accept your continued occupation based on criteria described in 24 CFR § 203.671, provided that the property is habitable as described in 24 CFR § 203.673, and that at the time your lender acquires title to the property, you will have lived in the property for at least 90 days.



**Attachment 4 (*Temporary Nature of Continued Occupancy*)**

ACCEPTED
on February 27, 2026

### HUD's Occupied Conveyance Procedures
### TEMPORARY NATURE OF CONTINUED OCCUPANCY

This is to advise you that occupancy of HUD-owned property is temporary in all cases and is subject to termination to facilitate preparing the property for sale and completing the sale. Temporary means that your lease arrangement with HUD is subject to termination at the convenience of the government upon 30 days' notice, or otherwise in accordance with applicable law. You should not view your occupancy of the property as a permanent or long-term arrangement. It is HUD's policy to ask you to vacate the property and, if necessary, take appropriate eviction action for the following causes:

1. Your failure to execute the lease.

2. Your failure to pay the required rent, including the initial payment at the time of execution of the lease.

3. Your failure to comply with the terms of the lease.

4. Your failure to allow access to the property upon request to accomplish necessary repairs, inspect the property, or allow real estate brokers to show the property to prospective purchasers.

5. Necessity to facilitate preparation of the property for sale and for completion of the sale; or

6. Assignment of the property by HUD to a different use or program.



Case Number 512-3101507-703

File Number 9658-1904   Page  7 of 7